# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| CAPITAL RISK MANAGEMENT, INC., * | |
| PLAINTIFF, * | |
| * | |
| v. * | CV-2:05CV1104-M |
| * | DEMAND FOR JURY TRIAL |
| ADVANCED HEALTHCARE * | |
| MANAGEMENT CORPORATION, a * | |
| corporation; MILLENNIUM BUSINESS * | |
| ASSOCIATION OF AMERICA, Inc., a * | |
| corporation, * | |
| DEFENDANTS. * | |

## COMPLAINT

COMES NOW the Plaintiff, Capital Risk Management, Inc., and files this Complaint against the defendants.

### PARTIES, JURISDICTION AND VENUE

1. The plaintiff, Capital Risk Management, Inc., ("CRM") is an Alabama corporation by virtue of being incorporated in Montgomery County, Alabama having its principal place of business in Montgomery, Alabama. CRM is in the business of providing benefits, including health insurance, to business owners and association members.

2. The defendant, ADVANCED HEALTHCARE MANAGEMENT CORPORATION, ("Advanced"), is a foreign corporation incorporated in the state of New York with its principal place of business in Albany, New York. At all times pertinent to this complaint, Advanced was in the business of providing third party administrator services for health care plans, including administering plans and paying claims.

3. The defendant, MILLENNIUM BUSINESS ASSOCIATION OF AMERICA,

INC., ("MBAA") is a foreign corporation incorporated in the state of Illinois with its principal place of business in Albany, New York. At all times pertinent to this complaint, MBAA was in the business of providing a health care plan to business owners and their employees through an association.

4.  The federal court has jurisdiction over this action pursuant to diversity jurisdiction, codified at 28 U.S.C. § 1332(a) since the matter in controversy exceeds the sum or value of $75,000 and since this action is between corporate citizens of different states.

5.  Venue in this district is proper pursuant to 28 U.S.C. § 1391 (a)(1) & (c), which permits suit to be brought in a judicial district where any defendant resides, and which further provides that a defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Both MBAA and Advanced are subject to personal jurisdiction in the Middle District of Alabama.

## STATEMENT OF FACTS

6.  In the fall of 1999, CRM was managing the health care benefits for the American Hospitality Association (AHA), which at that time had approximately 500 unit members. The Third Party Administrator (TPA) for the AHA was HealthStrategies. Over time, HealthStrategies' effectiveness as a TPA had deteriorated; it was not paying claims in a timely manner, if at all, among other issues. Accordingly, CRM needed to find a new association and TPA in which to enroll the AHA plan members in order to continue to provide them with health care benefits.

7.  In the fall of 1999, CRM's president, Ron Howard, was told about a company

called Millennium Business Association of America, Inc. MBAA was an organization which had an association plan similar to that of the AHA plan, and which used an "in-house" TPA, Advanced. The term "in-house" is both figurative and literal, as MBAA and Advanced were eventually located in the same office building which was owned by Peter Perry, the president of Advance and a member of the board of MBAA.

8. Ron Howard flew to Albany, New York to meet with Robert Aldunate, the president of MBAA, Peter D. Perry, the president of Advanced and the vice-president of Advanced. In the course of his visit, he toured the MBAA/Advanced offices, spoke to several of the people that handled claims and observed the manner in which MBAA and Advanced were doing business. At the conclusion of his visit, Mr. Howard on behalf of CRM, Robert Aldunate, on behalf of MBAA and Peter D. Perry and the vice-president, on behalf of Advanced, agreed to begin to negotiate a contract which would allow the members of AHA to be enrolled in the MBAA Association Health Plan which used Advanced as its TPA.

9. Negotiations continued for several months, but eventually it was agreed that on December 15, 1999, certain members of the AHA, namely the Emerald Coast Health Alliance, would be enrolled in the MBAA/Advanced health plan and begin receiving services from MBAA/Advanced, and that on January 1, 2000, the remaining members of the AHA would be enrolled in the MBAA/Advanced health plan. In addition, the contract between the parties provided in particular that MBAA/Advanced would take all of the AHA members and provide them with the MBAA health plan and that there would be a 2 month moratorium on premium payments to MBAA/Advanced. During that 2 month period, the

money that normally would be used as payments to MBAA/Advanced for premiums was to be used instead by MBAA/Advanced to pay claims that had not been paid by Health Strategies. In addition, CRM was to provide MBAA/Advanced with an additional $105,000 that was in the AHA claims account as of January 1, 2000 to also go toward the payment of claims not paid by HealthStrategies. MBAA/Advanced also agreed to reprocess all of HealthStrategies' claims with the AHA plan in order to determine whether the claims were paid correctly, and if any claims were paid incorrectly, MBAA/Advanced were to attempt to recoup any overpayments from the medical providers. MBAA/Advanced also agreed to process all unprocessed claims from Health Strategies. These unprocessed claims were also to be paid from the $105,000 in the claims account and the two months worth of premiums.

10. Based upon the contract, CRM provided MBAA/Advanced with the $105,000 and the two months of premiums for January and February, 2000, and enrolled the Emerald Coast Health Alliance in the MBAA plan by December 15, 1999 and the remaining AHA members that chose to participate in the MBAA plan by January 1, 2000. CRM assigned its stock as collateral to MBAA/Advanced. Said stock is still in MBAA/Advanced's possession.

11. CRM paid premiums to MBAA/Advanced for the enrolled members from January, 2000 though September, 2000. The premium income began at around $100,000 per month but reduced some each month. During that time period, MBAA/Advanced did not pay the previous claims from HealthStrategies, nor pay the vast majority of the claims of the AHA members enrolled in the MBAA health plan.

12. In September, 2000, MBAA/Advanced terminated the MBAA health plan

retroactive to June 30, 2000 and refunded to CRM three months of premium payments for July, August and September of 2000. However, neither the initial $105,000 claims account payment nor the January through June premiums were ever refunded to CRM. Nor was there ever an accounting provided. In addition, CRM's stock was not returned to it, and the stock assignment was not released.

## COUNT ONE:
## WANTON ADMINISTRATION OF HEALTH CARE PLAN

13. The Plaintiff, CRM, reavers all of the allegations of the preceding paragraphs as if set out in full herein.

14. From December 15, 1999 through June 30, 2000, MBAA and Advanced had a duty to CRM to properly administer the health plan for the AHA members that were transferred into the MBAA health plan. In conscious disregard of that duty, and with the sure knowledge that injury to CRM would result as a result of that disregard, MBAA and Advanced wantonly administered the health plan, with the result that most of the claims from the former AHA members were not processed or paid, the money sent to MBAA/Advanced for the payment of the old claims was used by MBAA/Advanced for other purposes, the stock of CRM was wrongfully retained by MBAA/Advanced and the plan was ultimately cancelled.

15. As a proximate cause of the wantonness of MBAA and Advanced, CRM was caused to suffer the loss of the $105,000 claims account payment, the premium payments for January through June, 2000, which were in excess of $400,000, numerous lawsuits regarding unpaid claims, and a loss to its reputation in the business community.

WHEREFORE, these premises considered, the plaintiff, CRM, demands judgment

against the defendants, Millennium Business Association of America, Inc. and Advanced Healthcare Management Corporation, for compensatory and punitive damages in an amount to be determined by the jury.

## COUNT TWO:
## BREACH OF CONTRACT

16. The Plaintiff reavers all of the preceding allegations in this complaint as if set out in full herein.

17. The defendants, MBAA and Advanced, contracted with CRM to do the following:

   1) To accept enrollment of all of the members of the AHA plan in the MBAA health plan, and provide the AHA members with the MBAA health plan benefits;

   2) To administer and pay the AHA members' health care claims; and

   3) To use the $105,000 from the claims payment account and the first two months of premiums to pay the unpaid Health Strategies' claims;

   4) To reprocess Health Strategies' processed claims and recoup any overpayments.

18. In consideration of MBAA and Advanced's promises, CRM paid Advanced and MBAA the $105,000 from the claims account and premium payments from January 2000 through September 2000, enrolled the Emerald Coast Health Alliance and the other AHA members in the MBAA plan at the appropriate time, and assigned its stock as collateral to MBAA/Advanced.

19. MBAA and Advanced materially breached their contract with CRM by failing

to pay the unpaid Health Strategies' claims, by failing to pay claims accrued once the AHA members were part of the MBAA plan, by not reprocessing the Health Strategies' claims, by failing to provide the AHA members with health care benefits, by using the $105,000 from the claims account and the first two months of premium payments for something other than the payment of claims under Health Strategies, by retaining the CRM stock and by not releasing the assignment of the CRM stock when MBAA/Advanced cancelled the health plan.

20. As a result of this material breach of contract by MBAA and Advanced, CRM demands a refund of all monies it paid from the claims account and from premium payments, the return of its stock as well as the release of the assignment of the stock, and consequential damages for the breach, which include the injury to its reputation as a result of the failure of MBAA and Advanced to pay claims and damages it suffered because of the litigation against CRM because of the unpaid claims.

WHEREFORE, these premises considered, CRM demands judgment against MBAA and Advanced for breach of contract and consequential damages in an amount the jury would deem appropriate.

Respectfully submitted on this the 15th day of November, 2005.

MORRIS, HAYNES & HORNSBY

*Randall S. Haynes*
Randall S. Haynes
Attorney for Plaintiff
HAY006

Post Office Box 1660
Alexander City, Alabama 35011-1660
(256) 329-2000
Fax: (256) 329-2015

## ATTORNEY AT LAW

*Gary Stephens*
Gary Stephens
Attorney for Plaintiff
STE152

4170 Carmichael Court
Montgomery, Alabama 36106
(334) 277-1616
Fax: (334) 356-7748

## JURY DEMAND

The Plaintiff demands trial by struck jury on all causes of action in the above referenced case.

*Randall S. Haynes*
Of Counsel