IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| CAPITAL RISK MANAGEMENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:05cv1104-MHT |
| ) | (WO) |
| MILLENNIUM BUSINESS ) | |
| ASSOCIATION OF AMERICA, ) | |
| Inc., a corporation, ) | |
| ) | |
| Defendant. ) | |

OPINION

This litigation is before the court on plaintiff Capital Risk Management, Inc.'s motion for default judgment against defendant Millennium Business Association of America, Inc.  Capital Risk waived its request for a jury trial on the issues presented in the motion.  Based on the evidence submitted at a hearing on September 8, 2006, the court concludes as follows:

## I. <u>FINDINGS OF FACT</u>

(1) Capital Risk is an Alabama corporation which is in the business of providing, among other things, health insurance to its customers; its principal place of business is in Alabama.

(2) Millennium is a foreign corporation with its principal place of business in Albany, New York.

(3) The matter in controversy exceeds the sum of $ 75,000.00.

(4) Millenium was properly served with the summons and complaint and has failed to respond as required under the Federal Rules of Civil Procedure.

(5) In the fall of 1999, Capital Risk was managing the health care benefits for the American Hospitality Association ("AHA"), which at that time had approximately 500 unit members. The third-party administrator for AHA was HealthStrategies. Because, over time, HealthStrategies' effectiveness as a third-party administrator deteriorated, Capital Risk had to find a

new association and third-party administrator in which to enroll the AHA plan members.

(6) In the fall of 1999, Capital Risk's president, Ron Howard, approached Millennium to determine if it could replace HealthStrategies. Millennium is an organization that sponsored an association plan similar to that of the AHA plan, using "in-house" third-party administrator Advanced Healthcare Management Corporation.

(7) Howard flew to Albany, NY to meet with Robert Aldunate (president of Millennium) and Peter D. Perry (president of Advanced Healthcare and vice-president of Millennium). At the conclusion of his visit, Howard (on behalf of Capital Risk), Aldunate (on behalf of Millennium), and Perry (on behalf of Advanced Healthcare), agreed to negotiate a contract that would enroll the members of AHA in the Millennium Association Health Plan, using Advanced Healthcare as its third-party administrator.

(8) Capital Risk and Millennium agreed that on December 15, 1999, certain members of AHA, namely the Emerald Coast Health Alliance, would be enrolled in the Millennium health plan and begin receiving services from Millennium as of that date. They further agreed that, on January 1, 2000, the remaining members of the AHA would be enrolled in the Millennium health plan.

(9) The contract between the parties provided that there would be a two-month moratorium on premium payments to Millennium. During that two-month period, the money that Millennium would normally use for premiums would be used instead to pay claims that had not been paid by HealthStrategies. Moreover, Capital Risk agreed to provide Millennium with an additional $ 105,000 that was in the AHA claims account as of January 1, 2000, to pay claims not paid by HealthStrategies. Millennium also agreed to reprocess all of HealthStrategies' claims with the AHA plan in order to determine whether the claims were adjudicated and paid correctly. If any claims were

paid incorrectly, Millennium agreed to attempt to recoup any overpayments from the medical providers. Millennium also agreed to process all unprocessed claims from HealthStrategies. Millennium was to pay these unprocessed claims using the $ 105,000 in the claims account and the two months of premiums.

(10) Pursuant to the contract, Capital Risk provided Millennium with the $ 105,000 payment and the two months of premiums for January and February 2000; enrolled the Emerald Coast Health Alliance by December 15, 1999; and enrolled the remaining AHA members participating in the MBAA plan by January 1, 2000. Capital Risk assigned its stock as collateral to Millennium, which is still in its possession.

(11) Capital Risk paid premiums to Millennium for the enrolled members from January 2000 though September 2000. The premium income began at around $ 100,000 per month but decreased some each month. During that time period, Millennium did not pay the previous claims from

HealthStrategies, nor did it pay the vast majority of the claims of AHA members enrolled in the health plan.

(12) In September 2000, Millennium terminated its health plan retroactive to June 30, 2000, and refunded to Capital Risk three months of premium payments for July, August, and September.  However, Millennium has not refunded the initial $ 105,000 claims-account payment and the January-through-June premiums.  Millennium has also failed to return Capital Risk's stock and release its assignment.

(13) As a result of Millennium's failure to pay the previous HealthStrategies claims and the claims of AHA members enrolled in the Millennium health plan, Capital Risk was the subject of 42 lawsuits and suffered a severe blow to its reputation as well as lost profits.

## II. CONCLUSIONS OF LAW

(1) Millennium is in default and, accordingly, default judgment will be entered against it. See Fed. R. Civ. P. 55.

(2) Millennium has fully breached its contract with Capital Risk, and the damages from that breach of contract constitute the following:

    (a) payment of $ 105,000 to the AHA claims account;

    (b) January-through-June premium payments totaling $ 427,000.00; and

    (c) pre-judgment interest for the AHA claims-account payment and the January-through-June payments at a 6 % interest rate. See 1975 Ala. Code § 8-8-8 ("All contracts, express or implied for ... the performance of any act or duty, bear interest from the day such money or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."); Alabama Pattern Jury Instructions

Civil 10.18 (2d ed. 1993) (interest on damages for breach of contract are calculated at a rate of 6 % per annum).

(3) Millennium's conduct was wanton and performed in conscious disregard of its duty to Capital Risk to properly administer the AHA health plan. The damages from Millennium's wanton conduct are:

    (a) injury to Capital Risk's reputation in the amount of $ 500,000; and

    (b) lost profits to Capital Risk in the amount of $ 125,000.

(4) Capital Risk is entitled to the total sum of $ 1,157,000 in compensatory damages, calculated as follows:

| AHA claims-account | $ 105,000 |
|---|---|
| January-through-June premiums | 427,000 |
| Injury to reputation | 500,000 |
| Lost profits | 125,000 |
| Total | $ 1,157,000 |

(5) Millennium's wanton conduct was sufficient to require the imposition of punitive damages. The court

has provided Capital Risk with a substantial economic recovery in this order in an amount exceeding one million dollars. The court finds that a one-to-one punitive damages ratio in this case is sufficient to deter Millennium from such future conduct, and awards Capital Risk punitive damages on its claim against Millennium in the amount of $ 1,157,000.00. See BMW v. Gore, 517 U.S. 559 (1996).

(6) Capital Risk is entitled to the return of its stock certificate from Millennium.

An appropriate judgment will be entered.

DONE, this the 12th day of September, 2006.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE